**Adam D. Ford** (NYB #4115531)
FORD & HUFF LC
228 Park Avenue South
New York, NY 10036
Telephone: (212) 287-5913
Email: adam.ford@fordcranelaw.com
*Attorney for Plaintiff Storylines Global Inc.,*
*Storylines Narrative AG & CO. KG, and*
*Alister Punton*

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STORYLINES GLOBAL INC., a Delaware corporation, STORYLINES NARRATIVE AG & CO. KG, a Liechtenstein Limited Company, AND ALISTER PUNTON,<br><br>Plaintiffs,<br>vs.<br><br>THE SMITH FAMILY TRUST and HORACE (HALSEY) SMITH, an individual,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 1:25-CV-5419<br><br>**[Filed Under Seal]** |

Plaintiffs Storylines Global Inc. ("Storylines Global"), Storylines Narrative AG & Co. KG ("SNAG"), and Alister Punton ("Punton"), by and through their undersigned counsel, bring this Complaint against Defendants The Smith Family Trust ("Trust") and Horace (Halsey) Smith ("Halsey," collectively "Defendants"), and allege as follows:

**Nature of the Action**

1.      This action arises from Defendants' breach of contractual obligations, bad-faith conduct, defamatory statements, and threats to interfere with Plaintiffs' business relationships in

1

connection with a luxury residential cruise ship project, the MV Narrative. Defendants, seeking an immediate refund of a $898,388.80 milestone payment without following Storylines' standard refund process, made false and defamatory accusations against Punton and Storylines, threatened to disrupt the resident community through social media and resident forums, and violated confidentiality obligations, causing harm to Plaintiffs' reputation and business operations.

2.  Plaintiffs seek declaratory relief, damages (including liquidated damages, nominal damages, punitive damages, reputational harm, and lost profits to be proven at trial), and injunctive relief to prevent further breaches and harm, under causes of action for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, defamation per se, and tortious interference with prospective business relations

### PARTIES, JURISDICTION AND VENUE

3.  Plaintiff Storylines Global Inc. ("Storylines Global") is a corporation incorporated under the laws of Delaware with its principal place of business at 228 Park Avenue South, New York, NY 10036, where it conducts significant management and operational decisions via video conferencing with its global team.

4.  Plaintiff Storylines Narrative AG & Co. KG ("SNAG") is a limited partnership organized under the laws of Liechtenstein, with its registered office at Landstrasse 63, Vaduz, Liechtenstein.

5.  Plaintiff Alister Punton is an individual and the CEO of Storylines Global and SNAG, residing in Queensland, Australia.

6.     Defendant The Smith Family Trust is a trust assumed to be organized under the laws of California based on its mailing address at 100 South Orange Grove Blvd Unit 302, Pasadena, CA 91106, subject to confirmation through discovery.

7.     Defendant Horace (Halsey) Smith is an individual and trustee of The Smith Family Trust, residing at 100 South Orange Grove Blvd Unit 302, Pasadena, CA 91106, and was located in Long Island, New York, during relevant events.

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiffs (Delaware and Liechtenstein entities, and Punton, a Australian resident) and Defendants (assumed California trust and resident), and the amount in controversy exceeds $75,000, as Defendants' milestone payment was $898,388.80, and liquidated damages sought are $900,328.80.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including Storylines Global's management and operational decisions at its New York headquarters at 228 Park Avenue South, the harm to Storylines' reputation in New York, and Defendants' defamatory statements made from Long Island, New York, on June 18, 2025.

10.    Regarding Choice of Law: The breach of contract and implied covenant claims are governed by Florida law, as specified in the Agreement of Sale of Exclusive Perpetual Use License ("EPULA") (page 183) and consistent with the parties' intent for transactions centered in Florida, where Storylines Global historically maintained some operations. The defamation and tortious interference claims are governed by New York law, as the defamatory statements were made from New York, and the harm to Plaintiffs' reputation and business relations occurred

3

primarily in New York, where Storylines Global's U.S. headquarters and management decisions are based.

## FACTUAL ALLEGATIONS

11. Plaintiff incorporates the foregoing paragraphs herein.

12. Storylines Global and SNAG are developing the MV Narrative, a luxury residential cruise ship designed for full-time occupancy, with cabin rights licensed to buyers under Agreements of Sale of Exclusive Perpetual Use License ("EPULA").

13. On May 31, 2024, the Trust executed an EPULA with SNAG for Cabin #1713 on the MV Narrative, agreeing to a total Exclusive License Charge of $4,501,644.00, with a First Milestone Payment of $898,388.80 due 30 days after notification that license agreements were ready.

14. The Trust also executed a Residence Refundable Deposit Agreement ("Deposit Agreement") and a Trust Agreement, establishing a trust with Till Hafner Rechtsanwaltsgesellschaft mbH to manage payments.

15. On June 16, 2024, the Trust wired the First Milestone Payment of $898,388.80 to the trust account at Commerzbank, held by secupay AG, per the EPULA and Trust Agreement.

16. Under Trust Agreement §§ 16(2)-(3), Plaintiffs may obtain repayment of their deposits **only** (a) if *all* purchasers jointly terminate the Trust, or (b) if no binding Ship-Building Contract is signed by 31 December 2024. Any repayment is "less (i) a non-refundable fee of up to ten percent (10 %) for design, equipment, fit-out, operations and management, (ii) Secupay service charges, and (iii) Trustee fees and expenses."

17. The EPULA itself contains **no refund provision**; its § 12 deals solely with buyer *default* and the seller's right to retain deposits as liquidated damages.

18. Storylines' standard refund process, as applied to prior withdrawing residents, typically requires a signed Settlement Agreement and a processing period of approximately 60 days, with a deduction of 11.01% for non-refundable fees (10% for design, equipment, fit-out, operations, and management per EPULA Section 4(b); 0.7% trustee fee for non-individual trustors per Trust Agreement, Exhibit 1; and 0.31% service provider fee per standard practice). This 60-day period is customary but negotiable, and Storylines was prepared to negotiate in good faith with Defendants.

19. On May 12 and May 19, 2025, the Trust, through Halsey, demanded an immediate refund of the full $898,388.80 without signing a Settlement Agreement, contrary to Storylines' standard process. Halsey's demand for payment within one day was unreasonable and not in good faith, especially when coupled with threats of defamation.

20. On June 11, 2025, SNAG offered the Trust a Settlement Agreement and Release, providing a refund of $799,476.19 (after the 11.01% deduction) within 60 days of execution, consistent with prior refunds. The Trust rejected this offer, demanding an immediate full refund and a signed apology from Storylines.

21. On June 18, 2025, from 9:05-9:20 AM EDT, Halsey, calling from Long Island, New York, spoke with Punton and Ami de Chapeaurouge, Storylines' outside counsel, via telephone. Halsey accused Punton of being a "fraudster" and Storylines of being a "criminal enterprise," statements that were false and baseless, made with the intent to coerce Storylines into providing an immediate full refund. See Exhibit A, Declaration of Ami de Chapeaurouge.

22. On June 19, 2025, Halsey emailed Storylines, stating: "If you boys want to play rough and lawyer up, I'm going to become your worst nightmare. You can imagine all that I can share, least of all your settlement letter which is only further proof of how poorly you treat departing residents." Halsey further threatened to "tell all the Residents that Alister and [Ami] as their lawyer are frauds" and to "use all the social media channels and contacts in the SL Community to bring SL and Alister down." These threats were intended to pressure Storylines into bypassing the standard refund process and were accompanied by false accusations undermining Storylines' integrity.

23. The Deposit Agreement (Section 12) prohibits disclosing proprietary information, including transaction details and Storylines' operations, to third parties (except legal, financial, or accounting advisors), stating: "The Interested Party agrees to keep strictly confidential all information concerning the Acquisition Price, the Reservation Deposit and specific details of this residence, the Passenger Vessel and other proprietary information, and the Interested Party will not make any disclosure thereof to any third party… [A] breach of this Section will cause irreparable harm, material loss and damages to Seller… [justifying] an injunction or other equitable relief."

24. Halsey's statements to Ami de Chapeaurouge, accusing Storylines of being a "criminal enterprise," disclosed proprietary information about Storylines' operations in violation of Deposit Agreement Section 12, as the statements exceeded Ami's role as counsel and were intended to harm Storylines' reputation.

25. The Trust Agreement (Section 10) prohibits trustors from obstructing or delaying trustee disbursements, stating: "The Trustor expressly understands and agrees that Trustor does

6

not have any legal right whatsoever to prevent, obstruct or delay any disbursement and/or payout of funds by the Trustee to SNAG, the shipyard or the Seller, as further stipulated by Section 11 of the EPULA."

26. Halsey's demand for an immediate full refund, bypassing the contractual refund process, constitutes an attempt to interfere with the trustee's operations.

27. Such interference also violates EPULA Section 11(e), which imposes liquidated damages of three times the deposits, plus attorney's fees and costs, for actions obstructing trustee disbursements.

28. Halsey's actions have caused harm, including Ami's consideration of withdrawing as counsel due to fears of personal reputational harm and potential legal actions against him and his firm, threatening Storylines' legal representation. Halsey's threats to disparage Storylines on social media and resident forums risk disrupting Storylines' relationships with its resident community and potential buyers, causing potential reputational harm and lost profits.

29. Storylines informed Halsey, upon his initial refund request, that a signed Settlement Agreement and a processing period were required, consistent with prior communications and practices.

**FIRST CAUSE OF ACTION**
Declaratory Relief - Injunction
(All Plaintiffs against All Defendants)

30. Plaintiff incorporates the foregoing paragraphs herein.

31.　　Defendants' breaches of contract, bad-faith conduct, defamatory statements, and threats to interfere with Storylines' business relations pose a likelihood of irreparable harm, including reputational damage and disruption of the MV Narrative community.

32.　　Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment that Defendants' actions violate the confidentiality provisions of the Deposit Agreement (Section 12), the non-obstruction provisions of the Trust Agreement (Section 10), and the refund process outlined in Storylines' standard practices, as well as an injunction to prevent further violations. The Deposit Agreement (Section 12) explicitly authorizes injunctive relief for confidentiality breaches, and the Settlement Agreement's confidentiality and non-disparagement clauses reflect the parties' intent to protect Storylines' reputation.

33.　　Under New York law, injunctive relief requires a plaintiff to satisfy a four-factor test: irreparable injury, inadequacy of legal remedies, balance of hardships, and consideration of the public interest. *Allen v. Koenigsmann*, 700 F. Supp. 3d 110. The plaintiff must demonstrate that it has suffered irreparable harm that cannot be adequately remedied by monetary damages, that legal remedies are insufficient to compensate for the injury, that the balance of hardships weighs in favor of granting equitable relief, and that the injunction would serve the public interest. *Id.* A plaintiff seeking a preliminary injunction "shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." 15 U.S.C. § 1116.

34.　　Plaintiffs have a likelihood of success on their breach of contract, defamation, and tortious interference claims, face irreparable harm from Defendants' ongoing threats, which risk

widespread reputational damage, and the equities favor preventing further harm over Defendants' interest in making false statements.

35.     WHEREFORE, Plaintiffs demand a declaratory judgment that Defendants' actions violate the Deposit Agreement, Trust Agreement, and Storylines' refund process, and a preliminary and permanent injunction enjoining Defendants from making further defamatory statements, disclosing confidential information, or interfering with Storylines' refund process and business relations, and such other relief as the Court deems just.

## SECOND CAUSE OF ACTION
Breach of Contract
(Storylines Global Inc. and SNAG against The Smith Family Trust and Halsey Smith)

36.     Plaintiff incorporates the foregoing paragraphs herein.

37.     The EPULA, Deposit Agreement, and Trust Agreement are valid, enforceable contracts between Storylines Global, SNAG, and the Trust, executed on May 31, 2024.

38.     Plaintiffs satisfied every obligation by wiring the initial milestone payment of $898,388.80 to the Commerzbank trust account designated in Trust Agreement § 3. Defendants, however, refused to permit the Trustee to hold the funds pending shipyard disbursements and instead demanded *immediate* repayment—contrary to Trust Agreement §§ 10-11 (no-obstruction) and §§ 16(2)-(3) (repayment only upon joint termination or failure to execute the SBC).

39.     Storylines Global and SNAG performed their obligations by offering a refund per the standard process, including a Settlement Agreement with a $799,476.19 refund after a 11.01% deduction, consistent with EPULA Section 4(b) and Trust Agreement, Exhibit 1.

9

40. Defendants' conduct constitutes a material breach of the Trust Agreement: (a) obstructing the Trustee's disbursement authority (id. § 10); (b) repudiating Trust Agreement §§ 16(2)-(3), which prohibit withdrawal except on the conditions stated; and (c) threatening litigation to force an unauthorized refund. Because the EPULA contains *no* refund obligation, Defendants' demands also violate the covenant of good faith and fair dealing implied in that agreement. As a direct result, Plaintiffs are exposed to cascading liability to other residents and the shipyard, and are entitled to recover liquidated damages under EPULA § 12(b) or, in the alternative, equitable relief.

41. Defendants breached the EPULA by demanding an immediate refund without signing the Settlement Agreement, violating Section 12(a), which defines failure to perform obligations as a default: "If Buyer fails to perform any of Buyer's obligations under this Agreement (including making scheduled Deposits and other payments), Buyer will be in 'default.'" Defendants further breached the Deposit Agreement (Section 12) by accusing Storylines of being a "criminal enterprise." Defendants also breached the Trust Agreement (Section 10) by attempting to obstruct the trustee's disbursement process through their immediate refund demands.

42. These breaches have damaged Plaintiffs by threatening the integrity of the refund process, community harmony, and legal representation, entitling them to liquidated damages of $900,328.80 (20% of the $4,501,644 Exclusive License Charge, per EPULA Section 12(b): "If the Buyer fails to close for any reason other than default by Seller… Seller may… receive the Deposits as liquidated and agreed upon damages… [with] an additional discretionary penalty…

10

whereby 20% of the Exclusive License Charge becomes due if Buyer defaults before steel-cutting"), and injunctive relief.

43. Under Florida law, to succeed on a breach of contract claim, a plaintiff must establish three essential elements: (1) the existence of a valid and enforceable contract between the parties, (2) the defendant's material breach of the contract, and (3) damages sustained by the plaintiff as a result of the defendant's breach. *In re Std. Jury Instructions-Contract & Bus. Cases*, 116 So. 3d 284; *Kun Xiang v. Ocala Heart Clinic II LLC*, 379 So. 3d 561; *Farman v. Deutsche Bank Nat'l Trust Co.*, 311 So. 3d 191.

44. First, the EPULA, Deposit Agreement, and Trust Agreement, executed on May 31, 2024, are valid, enforceable contracts between Storylines Global, SNAG, and the Trust, as they were signed by authorized representatives (Horace (Halsey) Smith for the Trust and Alister Punton for Storylines Global and SNAG) and supported by mutual consideration, including the Trust's $898,388.80 milestone payment and Storylines' provision of cabin rights and refund processes (paragraphs 13-14).

45. Second, Defendants materially breached these contracts by (a) demanding an immediate refund without signing the Settlement Agreement, violating EPULA Section 12(a)'s requirement to perform obligations (paragraphs 16-17); (b) disclosing proprietary information by accusing Storylines of being a "criminal enterprise" to Ami de Chapeaurouge, breaching Deposit Agreement Section 12's confidentiality clause (paragraph 20); and (c) attempting to obstruct the trustee's disbursement process through immediate refund demands, violating Trust Agreement Section 10 (paragraph 21). These breaches are material because they undermine the contracts'

purposes of ensuring an orderly refund process and protecting Storylines' operations and reputation.

46. Third, Plaintiffs suffered damages, including $900,328.80 in liquidated damages per EPULA Section 12(b) for the Trust's default before steel-cutting, disruption to the refund process integrity, threatened community harmony, and potential loss of legal representation due to Ami's consideration of withdrawal, as well as reputational harm and lost profits to be proven at trial (paragraphs 22, 33).

47. WHEREFORE, Plaintiffs Storylines Global and SNAG demand judgment against Defendants for liquidated damages of $900,328.80 per the EPULA Section 12(b), nominal damages, treble damages and attorneys' fees per the EPULA Section 11(e), injunctive relief, and such other relief as the Court deems just.

## THIRD CAUSE OF ACTION
Breach of Implied Covenant of Good Faith and Fair Dealing
(Storylines Global Inc. and SNAG against The Smith Family Trust and Halsey Smith)

48. Plaintiff incorporates the foregoing paragraphs herein.

49. Under Florida law, every contract includes an implied covenant of good faith and fair dealing. This covenant requires parties to act in good faith and not frustrate the purpose of the contract. The implied covenant is designed to protect the reasonable expectations of the contracting parties in light of their express agreement. *QBE Ins. Corp. v. Chalfonte Condo. Apt. Ass'n*, 94 So. 3d 541, *County of Brevard v. Miorelli Eng'g*, 703 So. 2d 1049, *Diageo Dominicana, S.R.L. v. United Brands, S.A.*, 314 So. 3d 295.

50. The EPULA, Deposit Agreement, and Trust Agreement aim to foster a cooperative community for the MV Narrative and ensure an orderly refund process. Defendants'

unreasonable demands for an immediate refund within one day, rejection of the Settlement Agreement, and threats to "take Storylines down" and "tell all the Residents that Alister and [Ami] are frauds" violate this covenant by undermining the agreements' purpose through coercive and bad-faith conduct, even if not explicitly breaching the contracts' terms.

51. Defendants' actions have threatened Storylines' community harmony and legal representation, risking irreparable reputational harm and lost profits.

52. WHEREFORE, Plaintiffs Storylines Global and SNAG demand judgment against Defendants for nominal damages, reputational harm and lost profits to be proven at trial, injunctive relief to prevent further bad-faith conduct, and such other relief as the Court deems just.

**FOURTH CAUSE OF ACTION**
Defamation Per Se
(Alister Punton against Halsey Smith)

53. Plaintiff incorporates the foregoing paragraphs herein.

54. Defamation per se includes specific categories of statements that are considered so inherently harmful that damages are presumed. Included in these categories are statements that charge the plaintiff with a serious crime, or tend to injure the plaintiff in their trade, business, or profession. *Liberman v. Gelstein*, 80 N.Y.2d 429, *Joo Tae Yoo v. Choi*, 210 A.D.3d 1062, *Epifani v. Johnson*, 65 A.D.3d 224.

55. On June 18, 2025, Halsey, acting for the Trust, falsely stated to Ami de Chapeaurouge that Punton was a "fraudster," Storylines was a "fraudulent enterprise," and de Chapeaurouge "must be a fraud too" for working with Storylines, with the intent to coerce a refund. These statements were made from Long Island, New York, and are false, baseless, and

13

made with actual malice or reckless disregard for their truth, as Halsey knew or should have known they lacked factual basis. See Exhibit A, Declaration of Ami de Chapeaurouge.

56. The statements were published to a third party (Ami) and impugn Punton's professional integrity, constituting defamation per se under New York law. Under New York law, proof of special damages is not required to establish a claim for defamation per se.

57. The statements have caused harm, including Ami's consideration of withdrawing as counsel due to fears of personal reputational harm and legal actions, threatening Punton's reputation and Storylines' operations.

58. WHEREFORE, Plaintiff Punton demands judgment against Halsey for nominal damages, punitive damages, reputational harm and lost profits to be proven at trial, injunctive relief to prevent further defamatory statements, and such other relief as the Court deems just.

**FIFTH CAUSE OF ACTION**
Tortious Interference with Business Relations
(Storylines Global Inc. and SNAG against The Smith Family Trust and Halsey Smith)

59. Plaintiff incorporates the foregoing paragraphs herein

60. Storylines Global and SNAG have existing and prospective business relationships with MV Narrative residents and potential buyers critical to the project's success.

61. Defendants, through Halsey's emailed threats on June 19, 2025, to "tell all the Residents that Alister and [Ami] are frauds" and "use all the social media channels and contacts in the SL Community to bring SL and Alister down," intentionally sought to interfere with these relationships using wrongful means, including defamatory statements and breaches of confidentiality.

62. Under New York law, tortious interference with business relations requires (1) the existence of a business relationship or reasonable expectation of entering into a business relationship with a third party, (2) the defendant's knowledge of that relationship, (3) intentional interference with the relationship accomplished either by wrongful means or for the sole purpose of harming the plaintiff, (4) causation showing that but for the defendant's conduct the plaintiff would have consummated the business relationship, and (5) resulting injury. *Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40; *Stuart's v. Edelman*, 196 A.D.3d 711; *106 N. Broadway, LLC v. Lawrence*, 189 A.D.3d 733; *Law Offs. of Ira H. Leibowitz v. Landmark Ventures, Inc.*, 131 A.D.3d 583; *Zetes v. Stephens*, 108 A.D.3d 1014.

63. First, Plaintiffs Storylines Global and SNAG have prospective business relationships with MV Narrative residents and potential buyers, who are critical to the project's success.

64. Second, Defendants, through Halsey's threats on June 19, 2025, to "tell all the Residents that Alister and [Ami] are frauds" and to "use all the social media channels and contacts in the SL Community to bring SL and Alister down," intentionally sought to disrupt these relationships using wrongful means, including defamatory statements (accusing Storylines of being a "criminal enterprise" and Punton of being a "fraudster") and breaches of the Deposit Agreement's confidentiality clause (Section 12) (paragraphs 19, 20, 49). These actions were intended to pressure Storylines into bypassing the standard refund process and to harm its reputation among residents and buyers.

15

65. Third, Defendants' threats have caused injury by risking disruption of Storylines' relationships with its resident community and potential buyers, threatening reputational harm and lost profits to be proven at trial (paragraphs 22, 51).

66. Defendants' threats risk irreparable reputational harm and lost profits by disrupting Storylines' relationships with residents and potential buyers.

67. WHEREFORE, Plaintiffs Storylines Global and SNAG demand judgment against Defendants for nominal damages, reputational harm and lost profits to be proven at trial, injunctive relief to prevent interference, and such other relief as the Court deems just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Enter a declaratory judgment on the First Cause of Action that Defendants' actions violate the Deposit Agreement (Section 12), Trust Agreement (Section 10), and Storylines' standard refund process, and a preliminary and permanent injunction enjoining Defendants from making further defamatory statements, disclosing confidential information, or interfering with Storylines' refund process and business relations;

B. Enter judgment in favor of Storylines Global and SNAG on the Second Cause of Action (Breach of Contract) for liquidated damages of $900,328.80, nominal damages, attorneys' fees, and injunctive relief;

C. Enter judgment in favor of Storylines Global and SNAG on the Third Cause of Action (Breach of Implied Covenant) for nominal damages, reputational harm and lost profits to be proven at trial, and injunctive relief;

D. Enter judgment in favor of Punton on the Fourth Cause of Action (Defamation Per Se) for nominal damages, punitive damages, reputational harm and lost profits to be proven at trial, and injunctive relief;

E. Enter judgment in favor of Storylines Global and SNAG on the Fifth Cause of Action (Tortious Interference) for nominal damages, reputational harm and lost profits to be proven at trial, and injunctive relief;

F. Award costs, attorneys' fees, and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable, except as waived by contract.

DATED this 30th day of June, 2025.

FORD & CRANE PLLC

/s/ Adam D. Ford
Adam D. Ford (NYB #4115531)
*Attorney for Plaintiff Storylines Global Inc., Storylines Narrative AG & CO. KG, and Alister Punton*